**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**CRAIG SMITH,**

**Petitioner**

**v.**

**NELSON ALVES,**

**Respondent.**

**Case No. 24-cv-10124-DJC**

**MEMORANDUM AND ORDER**

**CASPER, J.** **July 19, 2024**

## I. Introduction

Petitioner Craig Smith ("Smith"), proceeding *pro se*, has filed a habeas petition pursuant to 28 U.S.C. § 2254 (the "Petition"). D. 1. Respondent Nelson Alves ("Alves") has moved to dismiss the Petition. D. 16. For the reasons set forth below, the Court ALLOWS the motion and DENIES the Petition.

## II. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a petitioner raises a claim that was adjudicated on the merits in state court, a federal habeas courts may not grant relief unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As "the purpose of AEDPA is to ensure that federal habeas

relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," this standard is "difficult to meet." Greene v. Fisher, 565 U.S. 34, 38 (2011) (quoting Harrington v. Richter, 562 U.S. 86, 102-03 (2011)) (internal quotation marks omitted).

For the purposes of habeas relief under § 2254(d)(1), "clearly established Federal law" is defined as Supreme Court holdings, not dicta. White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Howes v. Fields, 565 U.S. 499, 505 (2012)). A state court decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at an opposite result. Williams v. Taylor, 529 U.S. 362, 405 (2000) (O'Connor, J., concurring) (citing Green v. French, 143 F.3d 865, 869–70 (4th Cir. 1998)). A state court decision involves "an unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. Thus, habeas relief is not warranted unless a state prisoner "show[s] that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

For the purposes of habeas relief under § 2254(d)(2), the petitioner must show that the state court's decision was based upon "objectively unreasonable" factual determinations, which are "presumed correct" unless rebutted by "clear and convincing evidence." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); 28 U.S.C. § 2254(e)(1). In other words, "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual

grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340 (citing 28 U.S.C. § 2254(d)(2)).

## III. Factual and Procedural Background

### A. Facts Underlying Commission of Crimes

The following facts are primarily drawn from the Supreme Judicial Court's decision affirming Smith's conviction, D. 16-3; Commonwealth v. Smith, 461 Mass. 438 (2012).

On January 8, 2006, Julio Ceus ("Ceus") and Natalie Sumner ("Sumner") were killed by two men during a robbery at Ceus's apartment. D. 16-3 at 2. Ceus lived in Allston with, in relevant part, Rony Valcy ("Valcy") and Ann Marie Romain ("Romain"). Id. Ceus's brother, Bermane, lived in the same building, and Bermane would assist Ceus in selling cocaine. Id. Smith met Ceus in November 2005 and began purchasing cocaine from him and his brother. Id. On January 7, 2006, the night before the incident, Smith visited Ceus's apartment, where Valcy was also present. Id.

On the evening of the incident, Sumner, who was Bermane's girlfriend, and her friend, Ashley Bjelf ("Bjelf"), who was visiting, were in Ceus's apartment while they waited for Bermane to return from work. Id. That night, at 9:06 p.m., Ceus received a call from Smith's cellphone. Id. Ceus answered and responded, "I'll be right there, don't let anyone in . . . When you get to the door, call me." Id. Two minutes later, Ceus received another call from Smith's cellphone number and indicated that he was "coming." Id. Ceus asked Sumner to open the door and they both made their way to the front of the apartment. Id. Shortly thereafter, Sumner returned to Ceus's bedroom alone, and Bjelf saw Ceus against the wall with another man facing him, whom she described as a stocky, six-foot-tall black man wearing sunglasses. Id. at 3. The man approached Sumner and Bjelf, pointed a gun at Bjelf and ordered them both to the floor, where they laid face down next to one another. Id. The man then forced Romain into Ceus's bedroom. Id.

The man entered Valcy's room and forced him to also lie down on the floor. Id. Valcy identified this man as Smith. Id. He observed a second man, whom he described as a five-foot-four bearded white man, going through a chest of drawers in Ceus's bedroom. Id. Smith asked Valcy and Ceus for money, which Ceus gave him, at which point he signaled to the other man and the two started shooting. Id. The men killed Ceus and Sumner and struck Valcy in the arm. Id. Romain and Bjelf sustained no injuries. Id. at 2. When the assailants left, Bjelf went to Bermane's apartment, who then called 911 at 9:23 p.m. Id. at 3.

At trial, the Commonwealth relied on Valcy's identification of Smith, records from Ceus's and Smith's cellphones and surveillance footage capturing Smith's vehicle behind Ceus's apartment building just after the murders occurred. Id.

**B. State Court Proceedings**

On September 27, 2007, a jury convicted Smith of two counts of first-degree murder under Mass. Gen. L. c. 265, § 1; assault with intent to murder while armed with a firearm under Mass. Gen. L. c. 265, § 18(b); assault and battery with a dangerous weapon under Mass. Gen. L. c. 265, § 15A(b); two counts of armed robbery under Mass. Gen. L. c. 265, § 17; and two counts of assault with a dangerous weapon under Mass. Gen. L. c. 265, § 15B(b). D. 16-1 at 2-3. On October 4, 2007, Smith filed a notice of appeal, id. at 12, in which he challenged the trial court's exclusion of third-party culprit evidence and its denial of Smith's peremptory challenge to a juror. D. 16-2 at 3-4; D. 16-3 at 3-6. The Supreme Judicial Court ("SJC") affirmed his conviction on February 1, 2012. D. 16-3.

On April 23, 2012, Smith moved for a new trial, D. 16-1 at 13, which the trial court denied on March 27, 2013, id. at 14. Smith appealed this denial on July 26, 2013. Id. On March 6, 2020, the SJC dismissed the case without prejudice. D. 16-4 at 2. Smith filed a second motion for a new trial on November 14, 2022, D. 16-1 at 19, which the trial court denied on June 5, 2023, id. at 20.

Smith appealed this decision, and, on December 19, 2023, the SJC denied his "gatekeeper application" pursuant to Mass. Gen. L. c. 278, § 33E, noting that the "application does not raise 'a new and substantial question which ought to be determined by the full court.'" D. 16-5 at 2.

### C. This Petition

In the Petition, Smith raises four grounds for relief based upon (1) ineffective assistance of trial counsel for failure to call an identification expert and failure to request funds to have a lab test Smith's gloves for the presence of blood and gunshot residue ("GSR") (Ground I); (2) new developments in eyewitness identification science (Ground II); (3) new evidence relating to DNA, GSR, blood results, cell site location information ("CSLI") and RMV records (Ground III); and (4) erroneous jury instructions and impermissible and suggestive identification procedures (Ground IV). D. 2 at 2. Alves now moves to dismiss the Petition, D. 16.[1]

## IV. Discussion

### A. Whether Smith's Petition is Time-Barred

Alves contends that Smith's petition is time-barred and, therefore, must be dismissed. D. 17 at 4. The AEDPA imposes a one-year statute of limitations period on the filing of petitions under 28 U.S.C. § 2254 that begins to run from the date on which the petitioner's state court conviction becomes final. 28 U.S.C. § 2244(d)(1)(A); see Delaney v. Matesanz, 264 F.3d 7, 10 (1st Cir. 2001). A state court conviction becomes final when the Supreme Court denies certiorari of the state court's final affirmation of a petitioner's conviction or, if the petitioner does not seek certiorari, upon the expiration of the ninety-day period during which a petition for certiorari might have been timely filed. See Clay v. United States, 537 U.S. 522, 525-26 (2003); Neverson v. Farquharson, 366 F.3d 32, 36 (1st Cir. 2004). Here, Smith's conviction was affirmed by the

[1] The Court allows Alves' motion to dispense with the conference requirement under Local Rule 7.1 for the purpose of this motion to dismiss, D. 15, *nunc pro tunc.*

Supreme Judicial Court on February 1, 2012, D. 16-3, and his conviction became final ninety days later, on May 1, 2012, when the period to seek certiorari expired.

Section 2244(d)(2), however, provides that "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Smith moved for a new trial on April 23, 2012, D. 16-1 at 13, which the Superior Court denied on March 27, 2013, id. at 14. Smith appealed this denial on July 26, 2013, id., which the SJC dismissed on March 6, 2020, D. 16-4 at 2. Because the appeal of the denial for a new trial remained pending until March 6, 2020, the statute of limitations did not accrue until the date of the dismissal. Accordingly, Smith had until March 6, 2021 to file his petition under 28 U.S.C. § 2254. Because he did not file the Petition until January 16, 2024, the Court concludes that it is untimely.

Moreover, Smith's filing of his second motion for new trial, filed on November 14, 2022, does not aid the timeliness of the Petition since it was filed after the AEDPA limitations period had already expired. See Delaney v. Matesanz, 264 F.3d 7, 11 (2001) (noting that petitioner's filing of a motion for new trial did not trigger the tolling 28 U.S.C. § 2244(d)(2) since "the one-year period already had elapsed by that date"); Dunker v. Bissonette, 154 F. Supp. 2d 95, 103 (D. Mass. 2003) (observing that 28 U.S.C. § 2244(d)(2) tolling provision "does not give petitioner the ability to revive an expired grace period by the simple expedient of filing a fifth motion for a new trial" and that "[s]uch an ability would eviscerate the one year grace period"). Accordingly, the filing of his second motion for new trial in November 2022 does not revive the one-year period that he had to file the Petition, which had already expired on March 6, 2021.

Smith is also not entitled to equitable tolling of the statute of limitations as he has not shown "extraordinary circumstances" warranting same. "To establish a basis for equitable tolling, a habeas petitioner must demonstrate that he or she has diligently pursued her rights" and "some extraordinary circumstance, or obstacle, prevented timely filing." Blue v. Medeiros, 913 F.3d 1, 8 (1st Cir. 2019); McCants v. Alves, 571 F. Supp. 3d 1, 3 (D. Mass. 2021). Although Smith made numerous, post-conviction filings in state court, see D. 16-1 at 13-21, there are some "unexplained gaps in his state litigation activity," D. 17 at 7; see D. 16-1 at 18. Moreover, even if Smith had shown that he diligently pursued his rights, he also has not shown some extraordinary circumstance that prevented the timely filing of the Petition. D. 17 at 6-7.

**B. Whether Smith's Assertion of Actual Innocence Overcomes Untimeliness**

Smith contends that the miscarriage of justice exception based upon actual innocence applies and thus overcomes any untimeliness of the Petition. D. 18 at 2-3. A court may excuse a procedural default, such as failure to comply with the statute of limitations, if the petitioner can demonstrate that the failure to consider his claim would be a fundamental miscarriage of justice. See McQuiggin v. Perkins, 569 U.S. 383, 392-93 (2013); Janosky v. St. Amand, 594 F.3d 39, 46 (1st Cir. 2010). The fundamental miscarriage of justice exception is "narrow and applies only in extraordinary circumstances -- circumstances in which a petitioner makes a showing of actual innocence." Id. (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). To meet this threshold, a petitioner must "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." McCants, 571 F. Supp. 3d at 3 (quoting McQuiggin, 569 U.S. at 386). Actual innocence requires a showing of "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

In his opposition, Smith asserts actual innocence, but he fails to develop this argument. D. 18 at 2-3. Although he refers to "new evidence . . . that has a bearing on [his] actual innocence," id. at 2, he does not explain the ways in which it shows his actual innocence. The First Circuit has held that "issues adverted to in a perfunctory fashion, unaccompanied by some effort at developed argumentation, are deemed waived." Watson v. Trans Union LLC, 223 F. App'x 5, 6 (1st Cir. 2007) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)) (internal quotation marks omitted). Even though *pro se* litigants are afforded a wider latitude than counseled litigants, Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), they are still subject to this requirement, United States v. Nishnianidze, 342 F.3d 6, 18 (1st Cir. 2003).

Nonetheless, the Court has considered that Smith highlights certain new evidence that he contends warrants a new trial in the Petition. To the extent that Smith is arguing that this new evidence would prove his actual innocence, the evidence is insufficient to establish same. First, Smith points to post-conviction DNA testing, which revealed that Smith's DNA was not present on the victims' clothing, D. 2 at 69-70, even though the evidence presented at trial suggested that Smith had touched the victims, id. at 72. This DNA evidence does not prove that Smith was actually innocent. A reasonable juror could have, for instance, reasoned that because the perpetrator wore gloves, see D. 2 at 79, the absence of Smith's DNA did not necessarily prove that he did not commit the crime. See Salim v. Kennedy, No. 20-11539-PBS, 2021 WL 11505342, at *14 (D. Mass. Aug. 16, 2021) (concluding that the proffered DNA evidence did not "constitute new reliable evidence of actual innocence" because the fact that "the blood underneath the victim's fingernails was female and thus could not have belonged to [the petitioner] d[id] not exonerate" him), report and recommendation adopted (Sept. 10, 2021), aff'd, No. 21-1799, 2023 WL 7287947 (1st Cir. Mar. 28, 2023), cert. denied, 144 S. Ct. 359 (2023).

Smith also highlights other recent testing that revealed that Smith's gloves and jacket, which police recovered from Smith's vehicle after the crime and which Smith claims were introduced at trial as being consistent with clothing worn by the perpetrator, did not contain GSR or blood. D. 2 at 79. For largely the same reasons, these test results do not show actual innocence. That these items did not contain gunshot residue or blood does not conclusively show that he did not commit the crime or that, on account of this evidence, no reasonable juror would have found him guilty beyond a reasonable doubt. "This evidence does not demonstrate [Smith's] factual innocence; it merely suggests that a piece of evidence before the jury was by itself inconclusive as to his guilt." Cryer v. Saba, No. 14-13020-GAO, 2015 WL 3741007, at *2 (D. Mass. June 15, 2015).

In addition, Smith cites recent scholarship that reveals the unreliability of CSLI evidence. D. 2 at 74. Such evidence merely challenges the weight of the evidence previously before the jury. Even as recounted by Smith in support of the Petition, during cross-examination of the expert who testified at trial as to CSLI, Smith's counsel elicited testimony regarding the limits of CSLI data in determining exact location. D. 2 at 72-73. Given these circumstances, the Court cannot conclude that such recent scholarship "would have caused a reasonable juror to be unable to find him guilty beyond a reasonable doubt." Norris v. Mitchell, No. 18-11610-FDS, 2019 WL 2918042, at *3 n.2 (D. Mass. July 8, 2019).

Smith also points to new evidence showing that, at the time of the incident, there were 537 white 1991 Toyota Corollas registered in Massachusetts. D. 2 at 77. Assuming that this evidence is new and was not previously available, it fails to conclusively show that the white 1991 Toyota Corolla featured in the surveillance video at the site of the crime was not Smith's. Smith, therefore, cannot show actual innocence based on such evidence.

Because Smith has not shown that the miscarriage of justice exception based upon actual innocence applies, the Court allows Alves's motion to dismiss Smith's petition as untimely.[2]

## V. Conclusion and Certificate of Appealability

For the foregoing reasons, the Court ALLOWS the motion to dismiss, D. 16, and DENIES the Petition, D. 1.

A petitioner may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (internal quotation marks omitted). Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court does not, at this juncture, conclude that reasonable jurists would find its conclusion denying the Petition debatable or wrong. The Court, therefore, is not inclined to issue a certificate of appealability but will give Smith until August 19, 2024 to file a memorandum if he seeks to address the issue of whether a certificate of appealability is warranted as to the Petition.

**So Ordered.**

/s Denise J. Casper
United States District Judge

[2] Given the ruling above, the Court does not reach the alternative ground for dismissal asserted by Alves, D. 17 at 8-10, and denies Smith's request for an evidentiary hearing on his ineffective assistance of counsel claim, D. 18 at 3, as moot in light of the dismissal of the Petition on other grounds.